**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**MICHAEL HENDERSON,**

       **Petitioner,**

  **v.**                      **CASE NO. 2:08-CV-532**
                                     **JUDGE HOLSCHUH**
                                     **MAGISTRATE JUDGE KING**

**MICHAEL SHEETS, Warden,**

       **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the petition, respondent's return of writ, petitioner's traverse and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

### FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> In the summer of 2002, A.B.FN1 attended The Ohio State University. She met appellant in a math class and they began dating. She described the relationship as a decent one, but one in which they regularly argued and had occasional violent outbursts. By the end of August, A.B. learned that she was pregnant. A.B. and appellant had discussions about ending the pregnancy, but appellant told her that he wanted to be a father. At this time, A.B. moved into an apartment near the university's campus. Although appellant did not live with her, he often stayed at her apartment and had keys to the apartment.

FN1. To protect her identity, the victim is referred to by her initials only.

On the afternoon of October 1, 2002, A.B. set up a new computer in her apartment. Appellant was supposed to help her with the computer but did not arrive when expected. Appellant eventually showed up around 9 p.m. and told A.B. that he had been drinking at a bar. Shortly thereafter, he left to buy more beer and quickly returned with a 12-pack of beer. Appellant and A.B. began arguing after appellant told her that he scheduled an appointment for her to get an abortion. A.B. told him to leave the apartment and that they would discuss the matter the next day. Appellant attempted to initiate sex with A.B. but she rejected his overtures. At around 9:30 or 9:45 p.m., A.B. again asked appellant to leave the apartment and he complied. A.B. did not know where appellant went.

Later that night, appellant called A.B. and began arguing with her again. A.B. testified that the caller I.D. on her phone indicated that the phone call came from appellant's mother's house. A.B. told appellant that she wanted him to remove his stuff from her apartment. Appellant said he wanted to come over that night to get his stuff, but A.B. again told him that it would be better if he came over the next day. Nevertheless, at around 10:30 p.m., appellant showed up at the apartment and began to gather his things. A.B. came out of her bedroom to protect her property and sat down in front of her new computer. As she sat there, appellant walked over to her and punched her in the eye. A.B. reached for the phone, but appellant grabbed her and threw the phone away. A.B. then ran into the bedroom to yell out the window for help. Appellant followed her and tackled her to the ground. He pushed her face into the carpet and held her down with his body, telling her not to scream. After 15 to 20 minutes of struggling like this, appellant flipped A.B. over and told her that he wanted to have sex with her. Appellant tore A.B .'s boxer shorts off. A.B. fought with appellant and tried to keep her knees together, but appellant forced her legs apart with his own legs, held her arms back, and vaginally raped her, although he did not ejaculate.

During the struggle, A.B. bit appellant's nose. His nose began bleeding profusely. Appellant stopped the act of rape and they began to talk about their relationship. A.B. testified that she used this break to try and calm appellant down. Ultimately, appellant ended the discussion and told A.B. that he was not leaving until he had sex with her. When she still refused, appellant stated that he would just knock her out and have sex with her. With that threat in her mind, A.B. gave in to his demand and had sex with appellant until he ejaculated. Thereafter, appellant blocked the door and told A.B. that he was not letting her leave and that they were going to have a lot more sex that night. They then left the bedroom and went into the bathroom. Appellant saw his nose in the mirror and told A.B. that he should kill her. At that point, A.B. ran out of the apartment to find help. She got a phone from someone on the street and called 911. Police officers from the Columbus Police Department were dispatched to A.B.'s location around 11:45 p.m. They met A.B. and took her back to her apartment. Subsequently, they found and arrested appellant at his mother's house. Appellant had noticeable, fresh scratches on his chest and neck area and was bleeding from a nose wound.

As a result of these events, appellant was charged with one count of kidnapping in violation of R.C. 2905.01(A)(4) with a sexually violent predator specification pursuant to R.C. 2941.148, two counts of rape in violation of R.C. 2907.02(A)(2), one count of attempted rape in violation of R.C. 2923.02 and 2907.02, and one count of abduction in violation of R.C. 2905.02. Appellant entered not guilty pleas to the charges and proceeded to a jury trial. At trial, appellant claimed that he and the victim had consensual sex but later fought when he told her that he made an appointment for her to get an abortion. The jury acquitted appellant of attempted rape but found him guilty of the other charges. The sexually violent predator specification was tried to the court at a later hearing. After that hearing, the trial court declared appellant to be a sexually violent predator. FN2 The trial court then sentenced appellant to consecutive eight-year prison terms for each charge for a total of 24 years in prison.FN3 The trial court imposed an additional life sentence for appellant's conviction of the sexually violent predator specification.

FN2. The court also, pursuant to R.C. 2950.09, declared appellant a sexual predator.

FN3. The trial court sentenced appellant on the kidnapping and rape charges. The trial court merged the abduction charge with the kidnapping charge for sentencing purposes.

*State v. Henderson*, 2005 WL 2303693 (Ohio App. 10th Dist. September 22, 2005). Petitioner

filed a timely appeal in which he asserted the following assignments of error:

First Assignment of Error: The court erroneously found appellant a sexually violent predator as count of [sic] one of the indictment did not carry a specification alleging the predicate offense of kidnapping was sexually motivated, and the remaining counts did not carry sexually violent predator specifications.

Second Assignment of Error: Imposition of consecutive sentences on counts one, two and three based on facts not found by the jury nor admitted by the defendant violated his right to trial by jury as guaranteed by the Sixth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution.

Third Assignment of Error: Kidnapping, as charged in count one of the indictment, and rape, as charged in counts two and three, are allied offenses of similar import committed with a single animus. The court erred by imposing consecutive sentences when it should have directed the prosecutor to elect on which offenses conviction would be entered and sentence pronounced.

Fourth Assignment of Error: The prosecutor improperly exercised three of his four preemptory challenges to remove African-American jurors.

Fifth Assignment of Error: By in effect becoming a witness, the prosecutor engaged in misconduct warranting reversal.

Sixth Assignment of Error: Appellant's convictions were

against the manifest weight of the evidence.

Seventh Assignment of Error: The evidence does not support the finding appellant is a sexually violent predator.

Eighth Assignment of Error: The facts of this case do not warrant the imposition of consecutive sentences.

Ninth Assignment of Error: Appellant received ineffective assistance of counsel insofar as counsel failed to properly respond to a reported attempt at influencing the jury.

*See id.* On September 22, 2005, the appellate court sustained petitioner's first assignment of error, rendering moot his seventh assignment of error, but otherwise affirmed the judgment of the trial court. The case was remanded to the trial court for resentencing without the sexually violent predator specification. *Id.* The state appellate court

affirmed the judgment of the trial court in all respects, with the exception that the trial court erred when it found appellant to be a sexually violent predator. Therefore, we reversed solely with respect to the sexually violent predator specification and remanded the matter for resentencing without that specification. Appellant then appealed to the Ohio Supreme Court, which reversed the trial court's judgment as it pertained to sentencing only, under the authority of *Foster, supra.* Upon remand, the trial court resentenced appellant to eight years of incarceration on the rape and kidnapping counts, to be served consecutively, for a total of 24 years.

*State v. Henderson,* 2007 WL 259246 (Ohio App. 10th Dist. January 30, 2007). Petitioner again filed a timely appeal, in which he asserted the following assignments of error:

[I.] THE SENTENCING ORDER OF THE COURT BELOW VIOLATED APPELLANT'S RIGHTS UNDER THE EX POST FACTO AND DUE PROCESS CLAUSES OF THE UNITED STATES CONSTITUTION.

[II.] THE SENTENCING ORDER OF THE COURT BELOW VIOLATED APPELLANT'S RIGHTS TO A TRIAL BY JURY GUARANTEED UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

[III.] THE SENTENCING ORDER OF THE COURT BELOW WAS CONTRARY TO LAW UNDER THE RULE OF LENITY.

[IV.] THE RECORD ESTABLISHES THAT THE OFFENSES OF RAPE AND KIDNAPPING WERE ALLIED OFFENSE[S] OF SIMILAR IMPORT COMMITTED WITH A SINGLE ANIMUS (R.C. 2941.25), AND THE TRIAL COURT ERRED IN ENTERING JUDGMENT OF CONVICTION AND SENTENCE ON BOTH.

*Id.* On January 30, 2007, the appellate court affirmed the trial court's judgment. *Id.* On June 6, 2007, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *State v. Henderson*, 114 Ohio St.3d 1413 (June 6, 2007).

On June 2, 2008, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

1. The sentencing order of the Ohio trial court violated petitioner Henderson's constitutional rights under the Ex Post Facto and Due Process Clauses of the United States Constitution.

2. The sentencing order of the Ohio Court violated petitioner Henderson's constitutional right to a trial by jury guaranteed under the Sixth and Fourteenth Amendments of the United States Constitution.

3. The sentencing order of the Ohio Court was contrary to the law under the rule of lenity.

4. The trial court erred in sentencing petitioner Henderson to the offenses of rape and kidnapping. This violated the Double Jeopardy Clause of the Fifth Amendment, since the conduct was committed with a single animus.

It is the position of the respondent that claim three is procedurally defaulted, and that the remainder of petitioner's claims are without merit.

## CLAIMS ONE AND TWO

In claim one, petitioner asserts that the retroactive application of *State v. Foster*, 109 Ohio St.3d (2006), to him violated the Ex Post Facto Clause. In claim two, petitioner asserts that the trial court's imposition of more than the minimum terms, and to consecutive terms of incarceration, violated the Sixth Amendment.

The state appellate court rejected these claims as follows:

> Appellant asserts in these two assignments of error that the trial court's sentencing order was violative of his right against ex post facto laws, due process rights, and right to a trial by jury. Essentially, appellant asserts the retroactive application of *Foster, supra*, to his sentence is unconstitutional. In *Foster,* the Ohio Supreme Court held that, under the United States Supreme Court's decisions in *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348, and *Blakely, supra*, portions of Ohio's sentencing scheme were unconstitutional because they required judicial fact finding before a defendant could be sentenced to more than the minimum sentence, the maximum sentence, and/or consecutive sentences. *Id.*, at paragraph one of the syllabus. As a remedy, the Ohio Supreme Court severed the offending sections from Ohio's sentencing code. Thus, pursuant to *Foster*, trial courts had full discretion to impose a prison sentence within the statutory range and were no longer required to make findings or give their reasons for imposing maximum, consecutive or more than minimum sentences. *Id.*, at ¶ 100.

Appellant argues that the severance remedy instituted in *Foster* violates his constitutional rights because the severance, in effect, raises the presumptive minimum sentence. Appellant maintains that, pursuant to the sentencing statutes in effect at the time his crimes were committed, there was a presumption of minimum and concurrent terms, and non-maximum sentences. This court recently addressed these issues in *State v. Gibson*, Franklin App. No. 06AP-509, 2006-Ohio-6899. In *Gibson*, this court found the retroactive application of *Foster* did not violate the right to due process and the ex post facto clause. We determined that we were bound to apply *Foster* as it was written. Id., at ¶ 15, citing *State v. Alexander*, Franklin App. No. 06AP-501, 2006-Ohio-6375. We explained that it is unlikely the Ohio Supreme Court would direct inferior courts to violate the constitution, and, in any event, inferior courts are bound by the Ohio Supreme Court directives. *Id.*, citing *State v. Grimes*, Washington App. No. 04CA17, 2006-Ohio-6360; *State v. Hildreth*, Lorain App. No. 06CA8879, 2006-Ohio-5058; and *State v. Durbin*, Greene App. No.2005-CA-134, 2006-Ohio-5125. We further reasoned in *Gibson* that, because criminal defendants were aware of the potential sentences at the time they committed their crimes, and because the remedial holding of *Foster* was not unexpected, *Foster* did not violate due process notions. *Id.*, at ¶ 16, citing *State v. McGhee*, Shelby App. No. 17-06-05, 2006-Ohio-5162. We also noted that the Fifth District Court in *State v. Paynter*, Muskingum App. No. CT2006-0034, 2006-Ohio-5542, observed that several federal circuit courts have addressed these issues in relation to the United States Supreme Court's decision in *State v. Booker* (2005), 543 U.S. 220, 125 S.Ct. 738, and rejected similar arguments regarding ex post facto and due process violations. *Id.*, citing *Paynter*, at ¶ 42.

In the present case, like the defendant in *Gibson*, appellant knew the statutory range of punishments at the time he committed the offenses for which he was convicted. The statutory range of punishments has not changed in light of *Foster*. Thus, *Foster* did not judicially increase appellant's sentence, and it did not retroactively apply a new statutory term to an earlier committed crime. Further, " 'at the time that appellant committed his crimes the law did not afford him an irrebuttable presumption of minimum and concurrent

sentences.' " *Id.*, at ¶ 18, citing *Alexander,* at ¶ 8. Therefore, we conclude that the remedial holding of *Foster* does not violate appellant's constitutional rights. For these reasons, and, based upon our rationale in *Gibson,* we overrule appellant's first and second assignments of error.

*State v. Henderson, supra,* 2007 WL 259246. The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. §2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States District Court for the Western District of Michigan has summarized this

standard as follows:

> [A] decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* at 413. A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state court's adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* Further, the federal habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.*

*Williams v. Lavigne*, 2006 WL 2524220 (W.D. Michigan August 30, 2006), citing *Williams v. Taylor*, 529 U.S. 362 (2000). Petitioner has failed to meet this standard here.

As noted recently in *Dickens v. Brunsman*, 2009 WL 3199066 (S.D. Ohio September 29, 2009),

> Petitioner's claim that the retroactive application of the *Foster* remedy to correct constitutional infirmities in Ohio's sentencing statutes constitutes a violation of the Constitution's Ex Post Facto and Due Process Clauses has been thoroughly discussed and uniformly rejected by this Court and other federal district and state courts in Ohio. *See, e.g., Hooks v. Sheets*, No. 1:07cv520, 2008 WL 4533693, at *3-5, *13-19 (S.D.Ohio Oct. 3, 2008) (Beckwith, J.; Hogan, M.J.) (unpublished) (and cases cited therein); *see also Wright v. Warden,* Pickaway Corr. Inst., --- F.Supp.2d ----, No. 1:07cv1022, 2009 WL 1850170, at *1, *23-25 (S.D. Ohio June 25, 2009) (Barrett, J.; Hogan, M.J.) (to be published) (and cases cited and quoted therein); *Kelley v. Brunsman*, --- F.Supp.2d ----, No. 1:08cv71, 2009 WL 1617774, at

*5-6, *17-18 (S.D. Ohio June 9, 2009) (Spiegel, J.; Hogan, M.J.) (to be published); *Smith v. Brunsman*, --- F.Supp.2d ----, No. 1:07cv878, 2009 WL 530113, at *1, *4-8 (S.D.Ohio Feb. 27, 2009) (Barrett, J.; Black, M.J.) (to be published) (noting that "both the federal district courts and Ohio courts have rejected ex post facto challenges to the *Foster* decision").FN8

FN8. *See also Rettig v. Jefferys*, 557 F.Supp.2d 830, 841 (N.D.Ohio 2008) (Polster, J.; McHargh, M.J.) (citing Ohio cases "uniformly reject [ing] ex post facto challenges to the *Foster* decision"); *Smith v. Welch*, No. 3:08cv2917, 2009 WL 2167863, at *1-3, *13-16 (N.D.Ohio July 17, 2009) (Economus, J.; Vecchiarelli, M.J.) (unpublished); *Schaub v. Brunsman,* No. 1:08cv2522, 2009 WL 2143746 (N.D.Ohio July 16, 2009) (Boyko, J.; Perelman, M.J.) (unpublished); *Mason v. Brunsman*, No. 1:07cv1020, 2009 WL 2169035, at *8-9, *34-37 (S.D.Ohio July 16, 2009) (Spiegel, S.J.; Black, M.J.) (unpublished); *Clagg v. Wolfe*, No. 2:08cv144, 2009 WL 1424427, at *1-6 (S.D.Ohio May 20, 2009) (Sargus, J.) (unpublished); *Pena v. Cooper*, No. 2:08cv195, 2009 WL 1324046, at *1, *16-19 (S.D.Ohio May 12, 2009) (Smith, J.; Abel, M.J.) (unpublished); *Newman v. Wilson*, No. 5:08cv483, 2009 WL 1212262, at *1, *11-12 (N.D.Ohio Apr. 30, 2009) (Oliver, J.; Perelman, M.J.) (unpublished) (and cases cited therein); *Trewartha v. Brunsman,* No. 2:07cv981, 2009 WL 614963, at *1, *10-13 (S.D.Ohio Mar. 5, 2009) (Holschuh, J.; Abel, M.J.) (unpublished); *Haning v. Wolfe*, No. 2:07cv1093, 2009 WL 541156, at *1, *3-5 (S.D.Ohio Feb. 27, 2009) (Watson, J.; Abel, M.J.) (unpublished) (and cases cited therein). *Cf. Turner v. Warden*, Noble Corr. Inst ., No. 1:08cv309, 2009 WL 866841, at *2, *9 (S.D.Ohio Mar. 31, 2009) (Spiegel, S.J.; Black, M.J.) (unpublished) (although the court held that *Foster* did not apply to the petitioner's sentence, it noted that "both the federal courts and Ohio courts have rejected ex post facto challenges to the *Foster* decision"); *Collins v. Warden*, Chillicothe Corr. Inst., No. 3:06cv256, 2008 WL 728390, at *1, *8-9 (S.D.Ohio Mar. 17, 2008) (Rice, J.; Merz, M.J.) (unpublished) (holding that "[w]hile Petitioner's original sentence violated *Blakely*, his new sentence [under the *Booker* remedy adopted in *Foster* ] did not," and that "[n]othing in the United States Constitution calls such a sentence into question").

*Id.* This Court agrees with other courts that have considered -- and have rejected -- this claim.

> Under the Ex Post Facto Clause of the United States Constitution, a state is prohibited from passing a law that (1) "makes an action done before the passing of the law, and which was innocent when done, criminal;" (2) "aggravates a crime, or makes it greater than it was, when committed;" (3) "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed;" and (4) "alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender."

> \*          \*          \*

> ... [T]he Fourteenth Amendment's Due Process Clause does limit ex post facto judicial decision-making. *Rogers*, 532 U .S. at 456. Although the Due Process Clause does not incorporate the specific prohibitions of the Ex Post Facto Clause, retroactive judicial decision-making must comport with "core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." *Id.* at 459 (citing *Bouie v. City of Columbia*, 378 U.S. 347, 351, 352, 354-55, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964)); *see also United States v. Barton*, 455 F.3d 649, 654 (6th Cir.) ("when addressing ex post facto-type due process concerns, questions of notice, foreseeability, and fair warning are paramount"), *cert. denied*, 549 U.S. 1087, 127 S.Ct. 748, 166 L.Ed.2d 579 (2006).

> Here, petitioner is unable to prevail on any claim that he lacked sufficient notice or "fair warning," because *Blakely*, *Booker*, and *Foster* did not change the elements necessary to convict petitioner ... and petitioner was aware of the potential penalties he faced. ... [B]oth before and after *Foster*, petitioner was on notice and thus had "fair warning" of the potential penalties he faced and of the trial court's discretion to impose those penalties.

*Hooks v. Sheets*, 2008 WL 4533693 (S.D.Ohio October 3, 2008); *see also Trewartha v. Brunsman*, 2009 WL 614963 (S.D. Ohio March 5, 2009); *Smith v. Wilson*, 2008 WL 4758696 (N.D.Ohio October 29, 2008) (same). This same reasoning applies here. Petitioner faced the same penalty ranges for his convictions both prior to and after *Foster*. Therefore, the trial court's imposition of maximum consecutive terms did not violate the Ex Post Facto or Due Process Clauses.[1]

Claims one and two are without merit.

## PROCEDURAL DEFAULT: CLAIM THREE

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456

---

[1] Petitioner also contends that *Blakely* required the trial court to impose minimum concurrent terms; however, this argument fails because the trial court re-sentenced petitioner after the Ohio Supreme Court's decision in *Foster* which eliminated this requirement from Ohio's sentencing scheme.

U.S. 107, 129 (1982);*Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

In claim three, petitioner asserts that his sentence was contrary to the law under the "Rule of Lenity."[2]  This claim, being readily apparent from the face of the record, was

---

[2]    "The '"policy of lenity means that the Court will not interpret a federal statute so as to increase the penalty it places on an individual when such an interpretation can be no more than a guess as to what Congress intended.'  *United States v. Boucha,* 236 F.3d 768, 774-75 (6th Cir. 2001) (quoting *Bifulco v. United States,* 447 U.S. 381, 387 (1980)).  The rule of lenity is founded on two policies: (a) the notion that the public is entitled to fair warning of the criminal penalties that apply to proscribed

properly raised on direct appeal; however, petitioner failed to present this same claim on appeal to the Ohio Supreme Court. *See Exhibit 9 to Return of Writ.* Further, he may now no longer present this claim to the Ohio Supreme Court under Ohio's doctrine of *res judicata. See State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967). The state courts were never given the opportunity to enforce the procedural rule at issue due to the nature of petitioner's procedural default. This Court deems the first and second parts of the *Maupin* test to have been met.

The Court must next decide whether the procedural rule at issue constitutes an adequate and independent basis upon which to foreclose review of this constitutional claim. This task requires the Court to balance the state's interests behind this procedural rule against the federal interest in reviewing federal claims. *See Maupin v. Smith*, 785 F.2d at 138. The Court of Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006)*; Coleman v. Mitchell*, 268 F.3d 417, 427-29 (6th Cir. 2001); *Seymour v. Walker,* 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998). The doctrine of *res judicata* is stated in unmistakable terms in countless Ohio decisions, and

---

conduct; and (b) the notion that the proscribed conduct should be defined by the legislature and not by the courts. *Boucha*, 236 F.3d at 774. The rule of lenity is applied in favor of a criminal defendant only if a statute remains ambiguous after consideration of its plain meaning, structure and legislative history. *Id."*

*United States v. Lawrence,* 555 F.3d 254, 260 (6th Cir. 2009).

Ohio courts have consistently refused, in reliance on that doctrine, to review the merits of claims. *See State v. Cole, supra; State v. Ishmail, supra.* Further, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law. The third part of the *Maupin* test has been met.

Petitioner has waived his right to present his claim three for federal habeas corpus review. He may still obtain review of the merits of this claim if he establishes cause for his procedural default, as well as actual prejudice from the alleged constitutional violation. However, petitioner has failed to establish cause and prejudice for his procedural defaults.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333. After review of the record, the Court does not deem this to be such a case.

Claim three is procedurally defaulted.

### CLAIM FOUR

In claim four, petitioner asserts that his sentences on rape and kidnapping violated the Double Jeopardy Clause because "the conduct was committed with a single animus." *Traverse,* at 8. On direct appeal, the state appellate court rejected this claim as follows:

Appellant contends in his third assignment of error that his

kidnapping and rape convictions are allied offenses of similar import committed with a single animus and that they should have been merged for sentencing in accordance with R.C. 2941.25. Appellant did not request merger and did not object to the trial court's failure to merge these offenses. A defendant's failure to raise the issue of allied offenses of similar import at the time of his conviction or sentencing results in a waiver of an allied offense claim on appeal absent plain error. *State v. Williams*, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 74; *State v. Houser* (May 30, 1996), Cuyahoga App. No. 69639. Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus.

The Double Jeopardy Clauses of the United States and Ohio Constitutions protect criminal defendants from multiple punishments for the same offense. *State v. Rance* (1999), 85 Ohio St.3d 632, 634, 710 N.E.2d 699. Ohio's General Assembly has indicated its intent to permit or prohibit cumulative punishments for the commission of certain offenses through the multiple-count statute set forth in R.C. 2941.25. *Rance*, at 635, 710 N.E.2d 699. That statute requires merger of separate counts of an indictment for purposes of sentencing as follows:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Accordingly, to decide whether a criminal defendant may be convicted of multiple counts, a trial court must first determine whether the offenses are allied offenses of similar import.

*Rance,* at 636, 710 N.E.2d 699. Rape, in violation of R.C. 2907.02(A)(2), and kidnapping, in violation of R.C. 2905.01(A)(4), are allied offenses of similar import. *See State v. Donald* (1979), 57 Ohio St.2d 73, 386 N.E.2d 1341, syllabus; *Williams,* at ¶ 72; *State v. Collins,* Ross App. No. 01CA-2590, 2002-Ohio-3212, at ¶ 19; *State v. Nixon* (Apr. 25, 2001), Lorain App. No. 00CA007638.

Because the kidnapping and rape charges in this case are allied offenses of similar import, appellant could only be convicted of both offenses if the crimes were committed separately or with a separate animus. *Id.; Collins,* at ¶ 17. The Supreme Court of Ohio has established the following principles to determine whether kidnapping and an offense of similar import are committed with a separate animus:

Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions.

*State v. Logan* (1979), 60 Ohio St.2d 126, 397 N.E.2d 1345, syllabus.

A.B. testified that after appellant hit her in the face, she ran into the bedroom to try and yell for help. Appellant followed her, tackled her to the floor, and pressed her face in the carpet to prevent her from yelling. Appellant was on top of her, holding down her legs with his legs and holding her arms with his arms. His entire body was on top of her, holding her down, and pressing her face into the carpet. A.B. testified that this lasted for 15 to 20 minutes, until he flipped her over and wanted to have sex with her. Additionally, A.B. testified that after the second rape, appellant stood in front of the bedroom door and told her that he was not letting her leave. Given the length of time appellant restrained the victim before he began to rape her, as well as appellant's conduct after the second rape, we cannot say that the restraint in this case was merely

incidental to the rape offense. Accordingly, the offenses were committed with a separate animus, and the trial court did not commit plain error when it failed to merge the kidnapping offense with the rape offense. Appellant's third assignment of error is overruled.

*State v. Henderson, supra,* 2005 WL 2303693. After re-sentencing, the state appellate court again rejected this claim as follows:

Appellant argues in his fourth assignment of error that the trial court erred when it sentenced him both on the rape and kidnapping counts because the rape and kidnapping offenses were allied offenses of similar import committed with a single animus. In *Henderson, supra,* we addressed this same issue, under a plain error analysis, and determined that the kidnapping offense did not merge with the rape offense for purposes of sentencing. In the present case, the state argues that, because we already addressed this issue in the prior appeal, appellant's argument on this issue after the remand, pursuant to *Foster,* is barred by *res judicata* and the law of the case doctrine. Appellant counters that, because we addressed the issue only under the plain error analysis, and he raised the same argument again on the remand, pursuant to *Foster,* he is now entitled to a full review of the issue before this court.

However, even if we were to address the merger issue again in the present case, we would concur with our prior determination in *Henderson.* R.C. 2941.25 provides, in pertinent part:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and

the defendant may be convicted of all of them.

Rape, in violation of R.C. 2907.02(A)(2), and kidnapping, in violation of R.C. 2905.01(A)(4), are allied offenses of similar import. *See State v. Donald* (1979), 57 Ohio St.2d 73, syllabus. Thus, appellant could only be convicted of both offenses if the crimes were committed separately or with a separate animus. In *State v. Logan* (1979), 60 Ohio St.2d 126, the Ohio Supreme Court established guidelines to determine whether kidnapping and rape are committed with a separate animus so as to permit separate punishment under R.C. 2941.25(B). In *Logan*, the court held that:

> Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions[.]

*Id.,* at subparagraph (a) of the syllabus.

A.B. testified as follows. On the night of the incident, appellant and A.B. got into an argument after appellant told her he had scheduled an abortion for her. Appellant left the residence at about 9:30 p.m. or 9:45 p.m., but returned at 10:30 p.m ., by which time A.B. had gone to bed. Appellant started gathering his personal belongings to leave the residence, and A.B. went to her computer desk in the family room to make certain he did not take any of her belongings. Appellant then hit A.B. in the face. When A.B. retrieved the telephone to dial 911, appellant grabbed her around her body, took the phone, and threw it. She decided to try to escape through a window, so she ran to her bedroom and screamed out the window. Appellant tackled her and dragged her to the floor. He pushed her face into the carpet so she could not scream. Appellant then told her to quit screaming, but she did not. He kept holding her down, holding

her arms and hands over her face. After 15 or 20 minutes, she realized that she was going to have to be quiet so he would let her breathe.

A.B. further testified that appellant then flipped her over onto her back and said he wanted to "f* *k" her. She tried to talk him out of it, but he tore off her boxer shorts. She kept her knees together and tried to kick him. Holding her arms back and her legs apart, he put his penis in her vagina. A.B. then bit his nose. The two then talked for about 15 minutes, and appellant started crying. Suddenly, appellant got angry again and said he was not going to leave until he "f* *ked" her and was "coming" tonight. He said it was going to "be a while." He then put her on the bed. Because he was threatening her life and the lives of her family, she gave in, and he had vaginal intercourse with her. Afterward, she said she needed a drink of water, but appellant stood in front of the door and stated he was not going to let her leave and that he was "coming a lot more tonight." He then allowed her to get a drink of water. While she was getting water, appellant saw his nose in the mirror and stated he should kill her. A.B. then returned to the bathroom momentarily, and, while he looked at himself in the mirror, A.B. ran out of the residence through the front door.

We concur in our prior appraisal of the situation in *Henderson*, at ¶ 35. A.B.'s testimony clearly indicated appellant restrained her before he began to rape her, and the restraint was prolonged. A.B.'s testimony did not suggest that the initial restraint was for the purpose of committing the sexual offense. Appellant restrained her because she was attempting to call 911 after appellant hit her in the face. Appellant restrained her again when she decided to try to scream out the bedroom window. He tackled her and buried her face in the carpet so she could not scream. Appellant held her body down and put her arms and hands over her face for 15 to 20 minutes. These confinements were independent of his decision to commit the later act of rape and were not merely incidental to the sexual offenses. These restraints were also temporally substantial and not for a limited period only to permit sexual conduct to occur. Accordingly, we find the kidnapping and rape offenses were committed with a separate animus, and the trial court did not

err when it failed to merge the kidnapping offense with the rape offenses. Appellant's fourth assignment of error is overruled.

*State v. Henderson, supra*, 2007 WL 259246.[3]  Again, the factual findings of the state appellate court are presumed to be correct. 28 U.S.C. §2254(e). Further, the record fails to reflect that the state court's decision is so unreasonable as to justify federal habeas corpus relief. *See* 28 U.S.C. §2254(d); *see also Williams v. Taylor, supra.*

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause has been interpreted as protecting criminal defendants from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the

---

[3] Judge Whiteside concurred in part and dissented in part as follows:

Although I concur in the majority opinion with regard to assignments of error one, two, and three, I am constrained to dissent with regard to assignment of error four for the reason that the kidnapping with which appellant was charged and convicted was committed with the same animus as the two separate rapes of which the jury found appellant to be guilty.

The first count of the indictment made the single kidnapping charge and states that appellant, "in violation of R.C. 2905.01 of the Ohio Revised Code, did, by force, threat, or deception, remove another, to wit: [A.B.], from the place where she was found, and/or restrain another, to wit: [A.B.], of her liberty, with the purpose to engage in sexual activity as defined in section 2907.01 of the Ohio Revised Code, with the said [A.B.], against her will[.]"

Accordingly, appellant was tried and convicted of kidnapping, for the purpose of engaging in sexual activity with A.B., and such offense and the two rape convictions were committed with the same animus so that the kidnapping conviction should be merged with the two rape convictions. The fourth assignment of error should be sustained.

*State v. Henderson, supra,* 2007 WL 259246.

same offense. *Brown v. Ohio,* 432 U.S. 161, 165 (1977). The traditional test for double jeopardy claims is the "same elements" test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932)(requiring the court to determine whether each charged offense "requires proof of an additional fact which the other does not"). The *Blockburger* test is designed to deal with the situation where closely connected conduct results in multiple charges under separate statutes. Under *Blockburger,* the critical question is whether the multiple charges in reality constitute the same offense. Thus, the *Blockburger* test focuses on whether the statutory elements of the two crimes charged are duplicative. If the elements of the two statutes are substantially the same, then double jeopardy is violated by charging the defendant under both.[4]

In addition, a defendant cannot be prosecuted for a greater offense after conviction or acquittal of the lesser included offense. *Brown v. Ohio, supra*. In *Brown*, the defendant was convicted on his guilty plea to the offense of joyriding and was subsequently convicted of the offense of auto theft. Both convictions were based on the same events. Under Ohio law, joyriding is a lesser included offense of auto theft. The Supreme Court, noting that

---

[4] In *Grady v. Corbin*, 499 U.S. 508, 519 (1990), which was decided after *Blockburger*, the United States Supreme Court held that the Double Jeopardy Clause also barred prosecution of multiple offenses where

> the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.

However, the Supreme Court overruled the "same conduct" rule of *Grady*, concluding that Grady was inconsistent with Supreme Court precedent and the common law understanding of double jeopardy. *United States v. Dixon*, 509 U.S. 688, 704 (1993).

conviction on a charge of joyriding required no proof not required for conviction on a charge of auto theft, held that the subsequent prosecution of the greater charge was precluded by double jeopardy principles. 432 U.S. at 168-69. The Supreme Court emphasized that the prohibition of successive prosecutions serves a policy of finality, protecting a defendant from a government's attempts to re-litigate facts or to secure additional penalties. *Id.,* at 165-66.

> However, the *Blockburger* test, a rule of statutory construction for federal statutes, does not necessarily control the inquiry into the intent of a state legislature. *Johnson,* 467 U.S. at 499 n. 8; *Banner v. Davis,* 886 F.2d 777, 780-82 (6th Cir.1989). Instead, when assessing the intent of a state legislature, the federal courts must defer to and are bound by the state courts' construction of their own statutes. *Hunter,* 459 U.S. at 368 (citing *O'Brien v. Skinner,* 414 U.S. 524, 531 (1974)); *see also Johnson,* 467 U.S. at 499; *Brown,* 432 U.S. at 167; *Banner,* 886 F.2d at 780. "Even if the crimes are the same under *Blockburger,* if it is evident that a state legislature intended to authorize cumulative punishments [for them, the federal] court's inquiry is at an end." *Johnson,* 467 U.S. at 499 n. 8. FN4
>
> FN4. *See also Hunter,* 459 U.S. at 368-69 ("Where ... a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger,* a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial" without violating the Double Jeopardy Clause.); *Banner,* 886 F.2d at 780-82.

*Carter v. Sheets,* 2006 WL 1645041 (S.D. Ohio June 7, 2006).

Petitioner contends that, because the indictment charged him with kidnapping with the purpose to commit rape, the state appellate court's conclusion that he acted with

separate animus such that he was properly sentenced on both the rape and kidnapping convictions was unreasonable and not supported by the record. *See Traverse.* This Court is not persuaded by this argument. The state appellate court applied Ohio's statute on allied offenses of similar import, and the Ohio Supreme Court's decision in *Logan v. Ohio, supra*, in concluding that petitioner's restraint of the victim was prolonged and not merely incidental to the rape. The facts and evidence support this finding. For this same reason, this Court likewise concludes that federal habeas corpus relief is not warranted. *See, e.g., Jones v. Baker*, 35 F.3d 566, unpublished, 1994 WL 454191 *6 (6th Cir. August 26, 1994)(no Double Jeopardy violation where kidnapping not merely incidental to aggravated robbery); *Carter v. Sheets,* 2006 WL 1645041 (S.D. Ohio June 7, 2006)(no Double Jeopardy violation where kidnapping not merely incidental to alleged rape); *Williams v. Taylor, supra*.

Claim four is without merit.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation,* that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made

herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

October 26, 2009                                             *s/Norah McCann King*
                                                             Norah McCann King
                                                             United States Magistrate Judge